BEFORE THE THIRD DIVISION, JULY 16, 1958

**No. 62186.**—Weigert Dagen Shoe Co. v. United States, petition 6826–R (Laredo).

JOHNSON, Judge: This is a petition for remission of additional duties assessed under section 489 of the Tariff Act of 1930 by reason of undervaluation of imported merchandise.

The merchandise consists of damaged leather huaraches, imported from Mexico on September 29, 1950. It was invoiced at a unit value of $0.116 per pair, or a total of $318.07, including packing and shipping expenses and sales taxes. The consular invoice contains a notation, "Export tax, Unknown paid by purchaiser [*sic*]." Entry was made at the total invoice value, less $61.42, covering charges for handling at Nuevo Laredo, "Rev. Mex. Customs," drayage, aforo, and commission. The merchandise was appraised at the invoice unit values, net, packed.

The petition herein was filed on March 28, 1951, subsequent to appraisement on February 9, 1951. A hearing was held on October 1, 1952, at St. Louis, Mo., and the case was transferred to the next Laredo docket. However, the case was continued from time to time thereafter at the request of petitioner and with the consent of respondent. It was heard and submitted at Laredo on January 30, 1958, counsel for both parties being granted time in which to file briefs.

At the trial, Julius Weigert, president and treasurer of the petitioning company, and Ramon Cantu, an employee of the forwarding agency, testified for the petitioner, and a number of documents were received in evidence.

According to the record presented, a quantity of merchandise was originally contracted for by petitioner from the shipper, Industrial de Pieles, at a certain price, but, while in transit to the border in June 1950, the truck met with an accident and the merchandise was badly damaged. After salvage operations, it was found that part of the merchandise, although damaged by water, was still salable, and petitioner entered into negotiations for the purchase thereof from Industrial de Pieles. Petitioner's final offer was at 1 peso per pair, Mexican expenses paid, which amounted to $0.116 United States currency. A telegram to this effect was sent to the seller on August 30, 1950 (petitioner's collective exhibit 4). However, on September 5, the seller wrote to the petitioner as follows (petitioner's collective exhibit 6):

We are in recepit [sic] of your letters August 24 and August 30 and you [sic] wire same last date. Regarding the 98 cases of job lot we have offered [sic] you as a salvaged item, we have to accepted [sic] from the Insurance Co at the price of 1.00 a pair in Laredo.

Will you accept this same price you to pay Mex, aforo and—Costum [sic] expenses that I understand will not exced [sic] of 20 cts.

On September 11, petitioner wrote the seller "accepting your offer of $1.—MN as wired to you." The order form states: "Prices on this order are F. O. B. Laredo, Texas, all charges included, and are in U. S. currency" (petitioner's collective exhibit 4). Nevertheless, the commercial invoice from Industrial de Pieles, dated September 21, contains the words "PRICES F. O. B. LAREDO MEXICO" (petitioner's exhibit 9). Mr. Weigert pointed out the f. o. b. Nuevo Laredo (Mexico) means that the export or aforo tax has not been paid and that f. o. b. Laredo, Tex., means that it has been paid, because the merchandise would not be permitted to leave Mexico otherwise.

Mr. Weigert testified that it was his understanding that the shipper was to pay the expenses, which amounted to $61.42 United States currency. He had no information at the time of entry that these charges were not for the account of the shipper. He had not seen the consular invoice with the statement that export tax was to be paid by the purchaser. According to the witness, that statement was not in accordance with the agreement of purchase.

The forwarding agents also understood that the charges were to be paid by the shipper. They paid the charges initially and billed the seller for them. However, the seller refused to pay all the Mexician charges, and, after negotiations, the purchaser agreed .to pay the aforo or Mexican export tax, because a very small amount was involved. Payment was made on November 3, 1950, in the sum of $52.29 (petitioner's collective exhibit 7). At no time was the purchaser asked to pay the handling charges at Nuevo Laredo, revision with Mexican customhouse, drayage from Nuevo Laredo to Laredo, and bridge toll.

Mr. Weigert testified that his firm imports large quantities of huaraches and other footwear through the port of Laredo; that it has had many transactions with this shipper; that the average shipment consists of 10, 15, or 20,000 pairs, whereas the instant shipment was of only 2,742 pairs. The importer employs the Carlos P. Cantu Forwarding Agency, as freight forwarder, and the latter employs a customs broker to clear the merchandise through customs. The witness Ramon Cantu testified that when documents covering merchandise to be imported are received, they are turned over to the broker to make the entry. In the usual shipments for petitioner, the shipper paid the charges. When the documents in this case were given to the broker, the witness had no intention of defrauding the

revenue and had no reason to believe that the charges would not be paid by the shipper. However, when the petitioner subsequently paid the charges, the witness omitted notifying the broker and the appraiser.

Mr. Weigert stated that it is the usual practice of his firm to send copies of orders and pricelists to the appraiser either directly or through its forwarding agents and customs brokers. In the instant case, when the firm paid the aforo tax, it omitted to advise the appraiser and send him copies of the correspondence with the shipper in regard to this purchase and did not amend the entry. Mr. Weigert stated that, in making entry at a value lower than the final appraised value, petitioner did not intend to defraud the revenue or conceal or misrepresent the facts or deceive the appraiser as to the value of the merchandise.

The inference to be drawn from the testimony and the documents in the instant case is that, at the time of importation, there had been no meeting of the minds of the parties as to what the purchase price included. Petitioner thought it included all expenses to Laredo, Tex., and that such charges were nondutiable; therefore, it deducted the same on entry. The seller thought the price was f. o. b. Nuevo Laredo, Mexico, not including the export tax, which was to be paid by the petitioner in addition to the purchase price. After further negotiations with the seller, and after entry, the petitioner paid the aforo or export tax, but it neglected to advise the appraiser and to amend the entry. Under all the circumstances of this case, we find that this omission is not an indication that there was an attempt to undervalue the merchandise.

We hold that the entry herein at a value less than the final appraised value was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The petition is granted. Judgment will be rendered accordingly.